INTHE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00065-MR-WCM

| | |
|---|---|
| AMARU EDWARD BARNES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>)<br>FNU MANGUM, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 19]; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of Defendant's Motion to Dismiss [Doc. 27]; and the Plaintiff's unsigned "Memorandum And OBJECTIONS" [Doc. 31], which the Court construes as Plaintiff's Objection to the Recommendation.

**I.    PROCEDURAL BACKGROUND**

Pro se Plaintiff Amaru Edward Barnes ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina. On March 4, 2025, he filed this action by unverified Complaint pursuant to 42 U.S.C. § 1983 against

Defendant FNU Mangum, a correctional officer at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina. [Doc. 1].

Plaintiff alleged as follows. On December 17, 2024, at approximately 8:00 p.m. during clothes exchange at Foothills, Defendant Mangum slammed Plaintiff's fingers in the trap. Mangum used his knees and hands to keep Plaintiff's fingers from being released from the trap while stating, "Remove your fingers from the trap Ni\*\*\*r." [Id. at 4]. Then, on December 26, 2024, at approximately 8:00 p.m. at Foothills, Defendant Mangum demanded that Plaintiff lockdown to stop Plaintiff from going to the canteen "for no reason" and attacked the Plaintiff, calling him "lil boy." Defendant Mangum pepper sprayed the Plaintiff and tackled him to the ground. [Id. at 5]. Plaintiff received several disciplinary infractions from this incident. [Id.].

Plaintiff appears to have alleged that he submitted grievances, presumably at Foothills, regarding the December 17 incident for which he has "receipts … on the tablet." [See id. at 4]. Plaintiff, however, also alleged that he "do[es] not know" whether Foothills had a grievance procedure and that he is "not sure" whether the grievance process was completed and that he "just tr[ies] to remember to keep a pink copy." [Id. at 6-7]. Plaintiff also

alleged that he filed grievances regarding the facts underlying his Complaint at Marion.[1]  [Id. at 7].

With his Complaint, Plaintiff included pink carbon copies of five grievances regarding *inter alia* Defendant Mangum's alleged conduct on December 17 and 26, 2024.[2]  [See Doc. 1-1 at 1-5].  Three of these grievances are dated during his time at Foothills (December 18, 2024; January 14, 2025; February 4, 2025) and two are dated after he was transferred to Marion (February 11, 2025; February 13, 2025).  [See id.].  These grievances do not show having been processed by correctional staff.  [Id.].  Plaintiff's Eighth Amendment excessive force claim against Defendant Mangum survived initial review.  [Doc. 7].

---

[1] Plaintiff was transferred to Marion on February 6, 2025.  [Doc. 23-2 at ¶ 12: Newton Dec.; Doc. 23-4].

[2] These grievances include: (1) a December 18, 2024 grievance complaining that Plaintiff was being "constantly" harassed by Defendant Mangum, who "intentionally attacks [the Plaintiff] causing mental distress;" (2) a January 14, 2025 grievance complaining that Defendant Mangum assaulted him on December 17, 2024, by slamming his fingers in the trap, and on December 26, 2024, by spraying the Plaintiff and physically assaulting him based on a false claim that Plaintiff spat on him; (3) a February 4, 2025 grievance complaining that Plaintiff had been held in segregation at Foothills on disciplinary offenses stemming from the December 26 incident, that he had been writing grievances regarding Defendant Mangum's assaults since December 18, and that he, Plaintiff, had been falsely accused of sexual offenses to antagonize him; (4) a February 11, 2025 grievance submitted at Marion complaining about the alleged assaults by Mangum, false disciplinary charges at Foothills, officials attempting to hide the extent of Plaintiff's injuries related to the December 26 use of force; officials "smuggling Viagra pills in [his] food," and his transfer to Marion after requesting a sick call regarding the pills; and (5) a February 13, 2025 grievance complaining about the injury to his collar bone related to the alleged December 26 use of force and requesting an x-ray of his collarbone.  [Doc. 1-1 at 1-5].

On August 8, 2025, Defendant Mangum moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint for his failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this action. [Doc. 19]. The Honorable W. Carleton Metcalf, United States Magistrate Judge, entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendant's motion. [Doc. 22]. Plaintiff timely filed two responses. [Docs. 25, 26]. Defendant did not reply.

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, Judge Metcalf was designated to consider the Defendant's motion and to submit a recommendation regarding its disposition. On September 12, 2025, Judge Metcalf entered a Memorandum and Recommendation in which he recommended that the Court should dismiss Plaintiff's claim without prejudice for failure to exhaust his administrative remedies. [Doc. 27]. Plaintiff timely filed Objections, which are unsigned and unverified.[3] [Doc. 31]. Defendant has not responded and the deadline to do so has expired.

---

[3] Because the outcome is the same regardless, the Court will consider, rather than strike, Plaintiff's unsigned filing. The Plaintiff has also filed two notices of appeal from the Magistrate Judge's Memorandum and Recommendation. [See Docs. 28, 32]. The Court nonetheless retains jurisdiction over this case because Plaintiff has appealed from a nonappealable, interlocutory order. See United States v. Jones, 367 Fed. Appx. 482 (4th

This matter, therefore, is ripe for disposition.

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to a Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no timely objections have been raised. Thomas v. Arn, 474 U.S. 140, 150 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing pro se objections to a magistrate judge's recommendation, however, "district

---

Cir. 2010) ("[T]he district court does not lose jurisdiction when the litigant takes an appeal from an unappealable order.").

courts must review de novo any articulated grounds to which the litigant appears to take issue." Elijah v. Dunbar, 66 F.4th 454, 460-61 (4th Cir. 2023) (citing Martin v. Duffy, 858 F.3d 239, 245-46 (4th Cir. 2017)). "Such a requirement advances district court's obligation to liberally construe pro se objections while maintaining constitutional limitations on a magistrate's authority." Id. at 461.

B. Exhaustion

The PLRA requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S.

6

Case 1:25-cv-00065-MR-WCM    Document 35    Filed 11/25/25    Page 6 of 14

81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

An inmate, however, is not required to affirmatively show exhaustion in his complaint. See Bock, 549 U.S. at 216. "Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant." Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (citing Bock, 549 U.S. at 216). "[D]espite the fact that failure-to-exhaust is an affirmative defense, a prisoner's complaint may be dismissed for non-exhaustion 'in the rare case where failure to exhaust is apparent from the fact of the complaint.'" Id. (quoting Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005)).

A prisoner, however, need only exhaust those remedies actually available to him. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Fourth Circuit recently examined factors rendering a prison grievance process unavailable. Griffin v. Bryant, 56 F.4th 328 (4th Cir. 2022). Griffin recognized that a grievance process is

unavailable:

> (1) where the remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative scheme is "so opaque" that it is "practically ... incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Griffin, 56 F4th at 335 (quoting Ross, 578 U.S. at 643-44). The Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance). "And no combination of 'special circumstances' can excuse a prisoner's failure to exhaust.'" Hardin, 2023 WL 3969989, at *2 (quoting Ross, 578 U.S. at 639).

The North Carolina Department of Adult Correction ("NCDAC") has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances. See Moore, 517 F.3d at 721 (regarding the comparable ARP procedures at NCDAC-predecessor North Carolina Department of Public Safety). Inmates are required to exhaust administrative remedies with the NCDAC in

accordance with ARP.  See id.  An inmate does not exhaust her administrative remedies with the NCDAC until he completes all three steps. See id.

## III. DISCUSSION

The Court considers *de novo* whether the Plaintiff failed to exhaust his administrative remedies.  On this issue, the Court concurs with Judge Metcalf's assessment and overrules Plaintiff's Objections.

Liberally construing Plaintiff's Objections, he appears to object to the Magistrate Judge's finding that "Plaintiff has not shown, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable to him."[4]  [See Doc. 31 at 2; Doc. 27 at 9].  In this regard, Plaintiff asserts that he "presented [a] preponderance of the evidence [that] administrative remedies were unavailable" and that he "could not properly file a civil suit against FNU Mangum [because his] DC-410 was never processed."  [Id. at 2-3].  Additionally, Plaintiff reiterates that he "ha[s] proof" of "letting [his] family know" of his complaint against Defendant Magnum and

---

[4] In the remainder of Plaintiff's unverified submission, he reiterates, further explains, and elaborates on various factual allegations underlying his claim and his purported efforts at exhaustion and incidents thereto, but he does not appear to object to any particular finding or recommendation of the Magistrate Judge.  [See Doc. 31].

that he, Plaintiff, had filed a grievance about the first alleged incident. [Id. at 31 at 2, 4 (quotation)].

Plaintiff's filings in this matter are filled with inconsistencies regarding *inter alia* his use of and access to the grievance process at Foothills and Marion. For instance, Plaintiff appeared to allege that he submitted grievances, presumably at Foothills, following the December 17 incident and that he has receipts "on the tablet." [Doc. 1 at 4]. Plaintiff later alleged though that he did not know whether Foothills had a grievance procedure, but also that Foothills did have a grievance procedure covering his claim. He also alleged that the result, if any, of the grievance was "I would think documented but nothing that I know of as a [*sic*] inmate other than excessive force report." [Id. at 7].

Then, in his unsworn response to Defendant's motion to dismiss, Plaintiff claimed that he submitted grievances on December 17 and 19 regarding the first alleged use of force, that he can prove that he wrote a grievance regarding the first alleged use of force, which he then asserted occurred on December 16, because he told a family member over text message that he did so grieve, and that he never received his "DC-410 back." [Doc. 25 at 1]. Plaintiff, however, did not claim in his response that

10

Case 1:25-cv-00065-MR-WCM    Document 35    Filed 11/25/25    Page 10 of 14

he submitted a grievance regarding the alleged December 26 incident "where [he] was actually assaulted and [his] shoulder dislocated." [Id. at 2].

Defendant, on the other hand, showed the following.[5] Facility staff and inmates at Foothills follow the NCDAC and Foothills ARPs. [Doc. 23-2 at ¶ 5: Newton Dec.]. In this regard, inmates must submit a grievance on a Form DC410 or use a grievance application on an inmate's tablet. [Id. at ¶ 6]. A screening officer reviews the grievance within three days to determine if it should be rejected for one of the reasons enumerated in the Foothills SOP ARP. [Id. at ¶ 7; see Doc. 23-3 at 4]. In any case, the screening officer signs and dates the grievance before returning the pink carbon copy of the grievance to the grieving inmate. [Id. at ¶ 7]. Additionally, the inmate receives written or electronic notice of whether the grievance has been accepted for processing or rejected within three days after it is received by screening officers. [Id. at ¶ 8].

All grievances submitted by inmates are recorded and maintained in a correspondence tracking system facilitated by the NCDAC. [Id. at ¶¶ 10, 13]. According to this system, Plaintiff never submitted a grievance while at Foothills. [Id. at ¶ 13; Doc. 23-5]. Moreover, none of the grievances that

---

[5] See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic.").

Plaintiff attached to his Complaint are signed or dated by receiving officers or include any other record information that would have been written thereon before a pink copy would have been returned to him. [Doc. 23-2 at ¶ 14; see Doc. 1-1 at 1-5].

Since arriving at Marion, Plaintiff submitted four grievances. [Doc. 23-6 at ¶ 6: Cothran Dec.]. For each of these grievances, Plaintiff agreed with the Step 1 response and sought no appeal. [Id. at ¶ 7; Doc. 23-7]. As such, Plaintiff did not exhaust any grievance through Step 3 during the relevant time. [Doc. 23-1 at ¶¶ 3, 10-11: Bass Dec.].

Judge Metcalf concluded that Defendant sufficiently established that Plaintiff did not exhaust his administrative remedies regarding the matters at issue and that Plaintiff, with his numerous inconsistent assertions and submissions, failed to make a contrary showing that exhaustion occurred or that administrative remedies were unavailable to him. [Doc. 27 at 9].

Having considered *de novo* whether the Plaintiff failed to exhaust his administrative remedies, the Court agrees with the Magistrate Judge's conclusions. The Defendant has shown that the Plaintiff failed to exhaust his administrative remedies. Even though some of the pink copies of grievances attached to Plaintiff's Complaint reference the December 26

incident, they show no indication of having been submitted or processed,[6] while Defendant's information shows that Plaintiff submitted no grievances while he was at Foothills. Moreover, Defendant has shown that the four grievances Plaintiff submitted at Marion were processed and that he accepted the Step 1 response to those grievances.

For these reasons, the Court concurs with the Magistrate Judge's assessment regarding Plaintiff's failure to exhaust his administrative remedies. Accordingly, Plaintiff's objections are overruled.

## IV. CONCLUSION

Having conducted a *de novo* review of those portions of the Memorandum and Recommendation to which objections were filed, the Court concludes that the Magistrate Judge's proposed conclusions of law are supported by and are consistent with current case law. Thus, the Plaintiff's Objections to the Memorandum and Recommendation are overruled.

---

[6] Plaintiff now concedes that "[t]he 5, pink carbon copies of five grievances were from me trying to back track and keep up with my complaints…." [Doc. 31 at 3].

13

# O R D E R

**IT IS, THEREFORE ORDERED** that the Plaintiff's Objections [Doc. 31] are **OVERRULED**; the Magistrate Judge's Memorandum and Recommendation [Doc. 27] is **ACCEPTED.**

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss [Doc. 19] is **GRANTED,** and this action is **DISMISSED WITHOUT PREJUDICE**.

The Clerk is respectfully instruction to terminate this action.

**IT IS SO ORDERED.**

Signed: November 24, 2025

Martin Reidinger
Chief United States District Judge